**Duncan E. MACKENZIE, Plaintiff–Appellant,**

v.

**CITY OF ROCKLEDGE, a Municipal corporation, Defendant–Appellee.**

No. 89–4011.

United States Court of Appeals, Eleventh Circuit.

Jan. 15, 1991.

---

Bernard H. Dempsey, Jr., Lori R. Cohen, Dempsey & Goldsmith, P.A., Orlando, Fla., for plaintiff-appellant.

Sharon Lee Stedman, Rumberger, Kirk, Caldwell, Cabaniss, Burke & Wechsler, Orlando, Fla., for defendant-appellee.

Before JOHNSON and HATCHETT, Circuit Judges, and DYER, Senior Circuit Judge.

JOHNSON, Circuit Judge:

Plaintiff Duncan Mackenzie ("the plaintiff") appeals the district court's summary judgment for the City of Rockledge on his due process, equal protection, and unconstitutional taking claims.

## I. STATEMENT OF THE CASE

### A. *Background Facts*

On March 5, 1982, the plaintiff purchased a parcel of land (hereinafter "the boathouse property") on the Indian River, containing a fifty-year-old boathouse and concrete dock. The plaintiff applied for a building permit to construct a commercial marina with thirty slips on the site. At that time, there were two relevant land use regulations that pertained to the property, the 1979 Comprehensive Plan ("the 1979 Plan") and Rockledge's zoning ordinances.

The 1979 Plan sought to reduce commercial development in the area surrounding the boathouse property except for the block containing City Hall. In that block, which included the plaintiff's property, the 1979 Plan allowed for "a combination of municipal, professional office (sic) and unique specialty shops to serve the needs of the adjoining neighborhood." The 1979 Plan also contained a provision requiring adequate off-street parking for commercial developments in the city.

The second relevant land use regulation was Rockledge's zoning ordinances. When the plaintiff purchased the boathouse property, it was zoned C–1. The ordinance did not list marinas as a designated use in C–1 areas. Rockledge Ordinance No. 165–65, § 32–61 (April 21, 1965). The ordinance also prohibited certain uses, including storage facilities. *Id.* Under Florida law, marinas are defined as licensed commercial facilities which provide "secured public moorings or dry storage of vessels on a leased basis." Fla.Stat.Ann. § 327.02(30) (West 1989). The ordinance did permit, however, service establishments which the City Council judged to be consistent with the designated uses and in harmony with the ordinance and the comprehensive plan. *Id.*

According to the plaintiff, the Mayor of Rockledge, Jack Oates, assured him before he purchased the boathouse property that the proposed marina complied fully with existing land use regulations. Oates never mentioned any parking requirements. A few weeks after purchasing the property, the plaintiff wrote to the City Manager, John Hipp [1], seeking confirmation that his preliminary building plan for the marina met Rockledge's building and zoning codes. The acting Building Official, Joseph Cistaro, responded by letter, dated March 24, 1982, and stated that the property appeared correctly zoned for a marina but that the plaintiff would have to satisfy off-street parking requirements of one space per slip and one space per 300 square feet of building space, or approximately thirty-three spaces.[2] After receiving this letter, the plaintiff spoke with Hipp and expressed his concerns regarding the parking requirements. Several days later, he received a second letter from Cistaro, dated March 30, 1982, stating that the proposed marina did not violate Rockledge's zoning ordinances, but setting forth certain requirements that had to be complied with before the building permit would be issued,

---

1. Hipp apparently died prior to the commencement of this litigation.

2. Rockledge had no specific ordinance addressing off-street parking requirements for marinas.

*e.g.,* receiving approvals from the Army Corps of Engineers ("ACOE"), the Department of Environmental Regulations ("DER"), and the Department of Natural Resources ("DNR"). This letter made no mention of any off-street parking requirements.

Over the next six months, the plaintiff received conflicting notices from Rockledge regarding the status of his permit application. In August and September of 1982, Cistaro sent two letters to the plaintiff conditioning the issuance of the permit on the provision of off-street parking for seven cars. In a subsequent letter dated October 6, 1982, Cistaro revised this requirement to three spaces.[3] Two days later, however, on October 8, 1982, Cistaro sent the plaintiff another letter stating that on the advice of the City Attorney, Walter Shepard, the plaintiff's marina could not be approved because it did not conform to the 1979 Plan.

In a letter dated March 22, 1983, the plaintiff informed Hipp that he wanted to appeal Cistaro's interpretation of the 1979 Plan. Cistaro then wrote a letter to the plaintiff dated March 28, 1983, informing him that an appeal should be addressed to the Board of Adjustment. Cistaro also stated that he was making the additional determinations that the marina was not a permitted use under zoning ordinance 165–65 and that the parking requirements were one parking space per slip. Cistaro stated that he was making these determinations so that the plaintiff could include all these decisions in one appeal to expedite matters. The Board of Adjustment subsequently affirmed Cistaro's determinations. The plaintiff appealed the Board's decision to the City Council, but the Council refused to take action.

The plaintiff subsequently proposed constructing a small office building on the site. This proposal received tentative approval from Cistaro in a letter dated September 20, 1983, subject to the approval of the DNR and ACOE.[4] The plaintiff apparently never pursued this revised proposal. On August 15, 1984, the plaintiff purchased a second property within 500 feet of the boathouse property to meet the off-street parking requirements for the marina. He claims that Hipp and a City Councilman, William Posey, assured him that he would be able to use this lot to meet the parking requirements for the marina.

In 1984, the Rockledge City Council enacted a new zoning ordinance that required two parking spaces per boat slip for a commercial marina and off-street parking located not more than two hundred feet from the marina. Rockledge Ordinance No. 708–84 (September 17, 1984). In 1985, Rockledge amended the 1979 Plan ("the 1985 Plan") to prohibit marinas in the area of Rockledge where the boathouse property is located. On October 15, 1986, the plaintiff informed the new City Manager, James McKnight, of the chronology of events surrounding his permit application. On March 17, 1987, McKnight denied the plaintiff's request for a building permit because the proposed marina was inconsistent with the 1985 Plan.

### B. *Procedural History*

On October 1, 1987, the plaintiff filed suit against Rockledge pursuant to 42 U.S.C.A. § 1983 (West 1981), complaining that Rockledge wrongfully denied him a building permit to construct a marina. The plaintiff alleged that Rockledge violated his constitutional rights of due process and equal protection by applying arbitrary, ad-hoc, off-street parking requirements to his

3. In each of these letters, Cistaro noted that issuance of the permit was also dependent on approval by the ACOE, DNR and DER. Some of the letters referred to other requirements, *e.g.,* electrical drawings, a plumbing riser, and foundation details.

4. The plaintiff denies making a revised proposal and states that this letter represented Rockledge's admission that the marina conformed to

the 1979 plan. The letter, however, specifically refers to the plaintiff's "revised plan for a single floor office building" and makes no mention of a marina or boat slip. The record shows that the plaintiff had appeared before the Planning Commissioner and stated that he no longer proposed a marina, but sought only to construct an office building.

marina projects. Moreover, he claimed that by passing the 1985 Plan and the amended zoning ordinance Rockledge effected an unconstitutional taking of his property.

On December 1, 1988, after completing discovery, the plaintiff filed a motion for partial summary judgment. On that same date, Rockledge filed a motion for summary judgment or partial summary judgment. On December 22, 1988, the district court held that genuine issues of material fact remained to be resolved and denied both parties' motions. On January 17, 1989, the court denied Rockledge's motion to dismiss and motion to strike which had been filed on November 5, 1987. On April 17, 1989, Rockledge filed a second motion for summary judgment or partial summary judgment. The court denied the motions on May 15, 1989. Although the case was scheduled for trial in May 1989, Judge Merhige allowed the parties to file motions for summary judgment once again. On November 1, 1989, the court granted summary judgment for Rockledge on all three of the plaintiff's claims. The plaintiff then filed this appeal, renewing all three claims.

## II. ANALYSIS

■ The district court order granting summary judgment is subject to *de novo* review by this Court. *Carriers Container Council v. Mobile S.S. Assoc. Inc.*, 896 F.2d 1330, 1337 (11th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 308, 112 L.Ed.2d 261 (1990). The Court determines whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We review the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Carriers Container Council*, 896 F.2d at 1337.

■ Federal courts do not sit as zoning boards of appeals. *Spence v. Zimmerman*, 873 F.2d 256, 262 (11th Cir.1989). Zoning is traditionally a legislative task, and courts should forbear reviewing the

merits of such rulings absent a showing that the action of the zoning board was arbitrary and capricious. *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

### A. *Due Process Claim*

The plaintiff contends that the district court erred in granting summary judgment for Rockledge. Citing this Court's decision in *Southern Coop. Dev. Fund v. Driggers*, 696 F.2d 1347, 1351–52 (11th Cir.), *cert. denied*, 463 U.S. 1208, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983), the plaintiff argues that he is not contesting the constitutionality of the 1979 Plan or the applicable zoning ordinance. Rather, he is challenging Rockledge's unconstitutional acts, *e.g.*, the use of illegal, arbitrary parking requirements to deprive him of a protected property interest in the building permit. He also argues that because he substantially altered his position in reliance on Cistaro's original interpretation of the land use regulations Rockledge is equitably estopped from applying its subsequent interpretation of the 1979 Plan to prohibit him from constructing the marina.

In granting Rockledge's motion for summary judgment, the district court found that the applicable zoning ordinance at the time the plaintiff purchased his property, No. 165–65, specifically prohibited storage facilities in C–1 areas. The court reasoned that because marinas are "arguably storage facilities" under Section 327.02(30) of Florida law Rockledge's application of the zoning ordinance was not arbitrary or capricious. It therefore granted Rockledge's motion for summary judgment.

■ To establish a Fourteenth Amendment claim for deprivation of property without due process, the plaintiff must demonstrate that (1) he had a constitutionally protected property interest and (2) the government deprived him of that " 'interest for an improper motive and by means that were pretextual, arbitrary and capricious....' " *Spence v. Zimmerman*, 873 F.2d 256, 258 (11th Cir.1989) (quoting *Hearn v. City of Gainesville*, 688 F.2d

1328, 1332 (11th Cir.1982)).[5] State law defines the parameters of a plaintiff's property interest for section 1983 purposes. *Marine One, Inc. v. Manatee County*, 877 F.2d 892, 894 (11th Cir.1989) (citations omitted). "Whether state law has created a property interest is a legal question for the court to decide." *Id.*

In *Marine One*, this Court held that Florida law creates no property right in possession of a building permit. *Id.* (citing *City of Hollywood v. Hollywood Beach Hotel Co.*, 283 So.2d 867 (Fla.Dist.Ct.App.1973), *aff'd in part, rev'd in part on other grounds*, 329 So.2d 10 (Fla.1976); *City of Boynton Beach v. Carroll*, 272 So.2d 171 (Fla.Dist.Ct.App.), *cert. denied*, 279 So.2d 871 (Fla.1973)).

As the district court noted, Rockledge Ordinance No. 165–65, which was passed long before the plaintiff purchased the property, specifically prohibited storage facilities. Because Section 327.02(30) of Florida law defined marinas as storage facilities, the ordinance specifically prohibited the plaintiff's proposed marina. Rockledge was merely applying a zoning ordinance passed long before the plaintiff purchased his property and therefore was not acting arbitrarily or capriciously. Moreover, the holding in *Marine One* is clear; Florida law creates no property interest in the possession of a building permit. *Marine One*, 877 F.2d at 877. Florida law also creates no property interest in the application for a building permit. *City of Boynton Beach*, 272 So.2d at 173. Accordingly, the plaintiff had no property interest in the permit. Therefore his due process claim is meritless.

The inquiry does not end here, however, for the doctrine of equitable estoppel may prevent the arbitrary rescission of a permit. *Marine One*, 877 F.2d at 894 (citing *Sakolsky v. City of Coral Gables*, 151 So.2d 433, 435 (Fla.1963)). But there is no evidence that the plaintiff materially altered his position in reliance on Rockledge's initial interpretation of the land use regulations. Rather, the plaintiff sought only to complete the other steps necessary to obtain issuance of the permit, *e.g.*, obtaining approvals from ACOE, DER, and DNR. The plaintiff cannot estop Rockledge from lawfully enforcing zoning ordinance No. 165–65 by using his efforts to fulfill legitimate conditions precedent to the issuance of a permit to establish reliance. *See Sakolsky*, 151 So.2d at 435–36 (holding that where a plaintiff showed that it had incurred substantial expense in reliance on a lawfully issued building permit the City of Coral Gables was estopped from rescinding the permit).

### B. *Equal Protection Claim* [6]

The plaintiff argues that the statements of two former Rockledge officials demonstrate that prior to his permit application the 1979 Plan had never been used to deny a permit. The plaintiff claims therefore that he was denied equal protection of the law.

Unequal application of a state law may violate the equal protection clause. *Ziegler v. Jackson*, 638 F.2d 776, 779 (5th Cir. Unit B 1981) (citation omitted).[7] To overcome an equal protection challenge, distinctions between similarly situated persons must be reasonable, not arbitrary, and substantially related to the object of the legislation. *Id.* (citation omitted).

The 1979 Plan and zoning ordinance No. 165–65 sought to restrict commercial development in Rockledge. Rock-

---

5. The *Spence* court added the following language after the ellipse to its quotation from *Hearn*, "and, ... without any rational basis." *Spence*, 873 F.2d at 258 (quoting *Hearn*, 688 F.2d at 1332). This language suggests that to make out a claim for deprivation of substantive due process a plaintiff must make a three-part showing: (1) improper motive, (2) arbitrary or pretextual means, and (3) no rational basis. When the quoted language is read in context, however, it is clear that the *Hearn* court had concluded that a government deprivation that results from an improper motive and by arbi-

trary or pretextual means necessarily lacks a rational basis. *See Hearn*, 688 F.2d at 1332.

6. Although the district court entered summary judgment on all three of the plaintiff's claims, its memorandum accompanying its order did not address the plaintiff's equal protection and unconstitutional taking claims.

7. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1982) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

ledge's decision to prohibit plaintiff from building a commercial marina in the City is fully consistent with this objective. Moreover, it is undisputed the plaintiff was the first individual to propose building a marina. The plaintiff has failed to show that others similarly situated were treated differently. Accordingly, the plaintiff has failed to make out an equal protection claim. *Id.*

## C. *Takings Clause Claim*

The plaintiff's final claim is that the 1985 Plan, which specifically prohibits commercial marinas in the area containing the boathouse property, effects a constitutional taking of the plaintiff's property. As noted above, Rockledge Ordinance No. 165–65 prohibited the construction of a marina on the boathouse property at the time the plaintiff purchased the property. Accordingly, this taking claim is meritless.

## D. *Rockledge's Motion for Attorneys' Fees*

Under 42 U.S.C.A. § 1988 a district court may award attorneys' fees to a prevailing defendant upon a finding that a plaintiff's lawsuit is frivolous or without foundation. *Sullivan v. School Board of Pinellas County,* 773 F.2d 1182, 1188 (11th Cir.1985). The district court denied Rockledge's motion for an award of attorneys' fees under section 1988. Rockledge does not appeal that decision. Rather, it has made a separate motion to this Court for an award of attorneys' fees on the grounds that the plaintiff's appeal is frivolous.

In its summary judgment memorandum, the district court noted that this Court's decision in *Southern Coop,* 696 F.2d at 1347, did provide some support for the plaintiff's claims. In denying Rockledge's motion for attorneys' fees the district court determined that the plaintiff's claims were not so unfounded as to warrant an award and stated that it was pleased that there would be an appeal. We agree with the district court's conclusion. Accordingly, we deny Rockledge's motion for attorneys' fees under section 1988.

Plaintiff has moved for attorneys' fees under 28 U.S.C.A. § 1927 (West Supp. 1990), claiming that Rockledge has attempted to divert this Court's attention from the legitimate issues raised in this appeal by filing its motion for attorneys' fees. To justify an award of attorneys' fees under section 1927, a court must find that a party has "unreasonably and vexatiously" multiplied the proceedings in a case. 28 U.S.C.A. § 1927 (West Supp. 1990). We do not find Rockledge's motion for attorneys' fees to be unreasonable or vexatious. Accordingly, we deny the plaintiff's motion for attorneys' fees under 28 U.S.C.A. § 1927 (West Supp.1990).

## III. CONCLUSION

For the foregoing reasons, We AFFIRM the district court's grant of summary judgment in favor of Rockledge. We also DENY Rockledge's motion for attorneys' fees pursuant to section 1988 and DENY the plaintiff's motion for sanctions under section 1927.